Our only case this afternoon is Crozer Chester Medical Center v. NLRB, members 18-1640 and 18-1973. And we'll hear from counsel. Good afternoon. My name is Andrew Grossman and I'm here on behalf of petitioners Crozer Chester Medical Center in Delaware County Memorial Hospital, which I'll refer to collectively as Crozer. I'd like to reserve three minutes for rebuttal if I could. That'll be granted. So can I ask you a question? All right. You're obviously more, well, you're very familiar with labor law. So I'm gonna ask you a question. I mean, it seems to be this case, though, they're different, sort of, it's a slightly different permutation here. But what happens in a case where there's a sales agreement like this case, one side says, I need it. The other side says, you don't need everything. What do you do with that? Do you, if you're a district court or before a magistrate judge, you just hand to them and say, you know, in camera, tell us, you know, make a decision. Is there a procedure like that in labor law? Can you enlist an arbitrator right away to have somebody just look at it and say, okay, you know, here, these provisions relevant, redact these ones that are not relevant. Well, I mean, to begin with, there certainly are, there certainly is ample arbitration within the labor law context under the Supreme Court Steelcase Trilogy. But that's not an issue here. So far as I understand, it wasn't an arbitrable issue with respect to the collective bargaining agreements. I think in a general sense, the statute does sort of answer the question. The parties have an obligation under the Act to bargain in good faith. And if they can't reach an impasse, then that's something that might ultimately go to the board. The problem here is that we never actually got to that point. Crozier offered, by my account, something like five times to bargain over this particular issue, to attempt to accommodate the parties' respective interests. Right. And the union's response was, go pound sand. We're only going to take the entire thing. When I took a look at the case, I saw it as a discovery dispute over a document, the asset purchase agreement, where one side is saying, I want it all, and the other side is saying, you're not entitled to it all. Why couldn't the parties resolve that issue on themselves, even when the law gives them a little bit of guidance? Because the law says that, you know, the asset purchase agreement, at least, is not presumptively discoverable. Or so why not? Why couldn't they contemplate a given take in terms of negotiation? Your Honor, I couldn't agree more. The parties' obligation under the Act, of course, is to bargain in good faith. The problem is that the union was unwilling to bargain at all. Crozier's position, which is amply supported by the law, is that it would only have to turn over anything that was in response to a request that specifically identified relevance, and that it could do so after bargaining to accommodate its confidentiality interests. It offered to bargain. I mean, that's what the parties should have done here. But the response of the union, every single time that Crozier offered to bargain, was one of two things. Several times, the response was silence, no response at all. And a number of occasions, the response was, we are not going to bargain over confidentiality at all, not one bit, unless you agree preemptively to waive your statutory rights and to turn over the entire agreement. And I think it's worth keeping in mind, I mean, the agreement here, this is a sale of a $100 million organization. You're not talking about just a few pages of legalese or something like that. You're talking about hundreds or thousands of pages worth of disclosures of everything from ongoing internal investigations, finances, capitalization, working cash on hand. All right. But how does the other side know what's relevant to you? It's a tough call. That's why, as Judge Sanchez points out, in district court, it's a little bit easier. You've got your third party, magistrate judge or district judge, who will say, here it is. Here's my call. How do they know what's relevant to you? What's relevant to them? Well, I think, in that instance, there is a procedure under the act for that. And that's the bargaining procedure. You know, I mean, I think the right way to look at this case is really as a procedure, you know, regarding procedural violations and procedural obligations. Right. You know, the way it works in labor law is that parties are supposed to bargain over these things. That's the entire purpose of the act, is to foster the resolution of workplace disputes through collective bargaining. And so you have an instance here where one party wanted something, the other side, on its rights, its statutory rights, said, we don't think you're entitled to this whole thing. In fact, just tell us what you want to know. Let us know specifically what it is that you're interested in and we'll resolve that. We'll have an accommodative process to resolve that. That's what the act says you're supposed to do. That's what the board has said in case after case, parties are supposed to do. I direct the court, for example, to the Silver Brothers case that involved just that, where the board recognized that there has to be that type of bargaining. So there is a process. It's different than the process that prevails in district court, but there is a process. But surely some of this agreement was relevant, right? I don't think that we would concede that, Your Honor. But let me say exactly why. If the question is whether this is relevant, the question has to be relevant to what? I mean, relevance isn't something that exists simply standing alone. That's why the burden is on the labor union to indicate a specific basis for its information request. It needs to say, we understand that this might be an effect of the controlled transaction for the company. We want information about this. We think it might affect... Your Honor, I think it would have been incumbent upon the union to actually say that. If the union had said something like, we're concerned about this particular effect to give us the information with respect to that, that would have been a request that then would indicate, that would then provide to Crozer the opportunity to evaluate the request and provide those portions of the agreement, if any, that were relevant to that request. But what the union requested here was give us this entire file cabinet's worth of information on the basis that something in there might be relevant to effects bargaining. The problem is that a control transaction like this can have any number of possible effects, right? And so it's incumbent upon the labor union to indicate to the employer what exactly they are concerned about, what it might be. Now, if the union had some specific concerns, they were concerned about this charge, this change, that change, that effect, and so on, they simply could have indicated that. The problem is they just said effects bargaining, and Crozer, something like four or five times, went back to them and clarified that request. Let's talk about relevance. Let's see what you need here. And the union's response was that it refused to bargain and it refused to clarify. In other words, there wasn't even a letter that went back from the union that said, we're interested in this, that, and the other thing. There was simply a blanket refusal to discuss the matter with Crozer. What wasn't the information provided to the union in the January 8th letter sufficient to put the Crozer on notice of what they wanted for effect bargaining? I don't think so, Your Honor. As relevant for effect bargaining? I think that what that letter did, Your Honor, was to indicate to the union several effects of what the control transaction might be, but it was then incumbent upon the union to indicate what type of information it wanted. I would direct the court in that respect to the board's California gas case, where there was a request for information regarding a safety proceeding that the union believed had some relevance to the collective bargaining agreement. Everybody knew there was this state board safety proceeding, but the board said that the union's request was insufficient because the union didn't tie it to a particular collective bargaining provision. All it had to say was, we think it's relevant to this obligation under the CBA, and there you go. That's an adequate request. But in this instance, you're literally asking, it's as if the union went and was pointing at a file cabinet full of information and said, whatever is here that is relevant, give us that in the file cabinet. And it's simply, under this court's precedence, among others, that's simply insufficient to put the employer on notice of what on earth it is that the union is actually asking for. You can't consider a request  In part of the response, Crozier responded that not all of it is relevant, recognizing that some of the asset purchase agreement was relevant to effect bargaining. Why couldn't you sort of, on your own, give them a list of what you thought was relevant and not discoverable, and those things that you didn't think were not discoverable, keep them separately? Why couldn't you produce some of it? Well, I think there are a couple of, so let me address that in, I guess, two ways. The first is that I don't think that Crozier actually conceded that there was any relevance here. The union requested the entire asset purchase agreement, and Ms. Malota's response was, the entire asset purchase agreement is not relevant. It didn't really concede in any respect. I mean, the word that Crozier used again and again was not relevant. But is it implicit in that statement that something is relevant? Some portions of the asset purchase agreement are relevant. I don't think it's implicit, because it was responding to exactly what it was that the union had requested. But that said, Crozier had to keep open the possibility that there might be something that was relevant with respect to a specific information request. After all, Crozier has an obligation to bargain in good faith over these matters. And so if the union were to come forward with a more specific request, there might well be something relevant to that. In the Tenth Circuit explained that an employer may not simply refuse to comply with an ambiguous and or overbroad information request, but request clarification and or comply with the request to the extent it encompasses necessary and relevant information. That's the Norris case. Is that an accurate statement of the law in your, or at least the law maybe we should be adopting, and has it been complied with here? I think it's accurate, but not complete, Your Honor. And I say that in several respects. First of all, Crozier did respond and seek clarification. So it fulfilled its of course, is the confidentiality issue that was at play here. It's black letter law across dozens of board cases that when an employer has a legitimate confidentiality interest, the employer is entitled to pursue accommodative bargaining with respect to that interest. That's what Crozier sought to do here. So even if you disagree with us on this relevance issue, even if you thought there was something that Crozier should have turned over, Crozier still had the right to meet with the board and discuss how it is that they might work out an accommodation with respect to the confidentiality interest. The same way, by the way, that Crozier did with the two other unions that didn't refuse to participate in bargaining with Crozier over that issue. I would also say that, I mean, the key point here, I think, is that Crozier really did act to bargain at every step here, particularly with respect to confidentiality. As I understand it, the board's argument to the contrary is simply that Crozier's confidentiality interest, such as it was, was not sufficient. But again, I would direct the court to the Silver Brothers case, which I think addresses really this precise scenario. So if I could very briefly, I'd like to address simply our argument regarding the board's remedy. We identify, of course, with Member Emanuel's partial dissent from the board's decision. The problem with the board's decision, as well as the LJ decision, is that it simply refused to take any account of the union's conduct here. Crozier's procedural rights, in terms of how this ought to have been negotiated, are clearly established. The board did not purport to be adopting a new interpretation of the act in this instance. And the board simply declined to follow its own rules, the way that it has interpreted the act in case after case, to recognize and enforce Crozier's procedural rights. If it had followed cases like Silver Brothers, the response would have been possibly to dismiss the complaint, or in the alternative, to direct the parties to bargain in good faith, which is really what should have happened to begin with. So if the court has no further questions, I'll reserve the balance of my time for rebuttal. Thank you, Your Honor. Good afternoon, Your Honor. May it please the court, I am Greg Laro for the National Labor Relations Board, asking for the court to enforce the board's order because it is supported by substantial evidence and consistent with precedent. As Your Honor has noted this morning, one question is, how would the union know what the employer deems relevant or confidential, and what are the procedures for resolving disputes over that? And the board has set out an orderly way to resolve that dispute. First, it's the union's burden to establish relevance under a liberal discovery type standard. It's admittedly not a particularly heavy burden, in part because of that issue. The union doesn't have the document they're requesting. What they do have here, and Your Honor's noted it this morning, is a letter from the employer about the sale, conveying a lot about the potential relevance of the sale to effects bargaining. Even where the letter notes what won't change, it actually notes what may change for unit employees, that they will be hired by the new entity, perhaps under different terms. And they also note expansion of operations, which could go to the location and availability of work for unit employees, and other issues unions have a right to bargain over. And of course, the union said after getting that letter, yes, I'd like a copy of that, and you can expect a request for effects bargaining. And then after that, and I know this was discussed this morning, the employer, through its agent, acknowledged at least partial relevance multiple times. Counselor, I don't think we'd be here if there'd been a request for tell us about the new locations. Tell us about our benefits. What I have in the record, JA 67, we start with a January 18th email that says, we're asking for the complete purchase agreement. We have a response, JA 68, saying I haven't heard back from you, we're asking for the complete agreement. The employer responds and asks for a little clarification, saying it's confidential proprietary, and the whole thing is not relevant, but if you want to give us an alternative request, narrowed down specificity, you can do that. And the response in February 11th is, we intend to file a charge. There's no effort to specify, narrow down, refer back to specific things that were in the original announcement of the merger. So you seemed to agree in your opening remarks that the union had to gesture towards, how does this relate to bargaining? I don't think simply mentioning effects bargaining without more gets you there. Right, no, and I understand what your honor is saying, but in this case, when you look at the facts in the context, it's an example of what this court referred to in Hertz. That is, whereas here, the relevance of the document under a liberal discovery type standard is apparent to the parties, or the employer knew or should have known of the union's theory, which borrowed potentially from the employer's letter. The employer conveyed potential relevance. How is it apparent that the exceptions to generally accepted accounting principles are relevant based on this? Your honor, under the liberal standard, I'm not saying it's a heavy burden for the union to show relevance, and there's reason for that. The act, for the act, a broad disclosure rule helps furthers meaningful informed bargaining. How does this make it apparent that intellectual property rights are relevant? Well, as to that, the union's not required to specify which portions of the document it hasn't seen because it's been withheld are particularly relevant. In this case, the union is entitled to say that document regarding the sale you just described, it sounds likely to have potentially relevant information, information that would assist me in fulfilling my statutory duty to bargain over the effect of the sale on the employees I represent. And to answer your question, here's the orderly process. Once the union does that, meeting that admittedly low bar, then here's how we proceed. The employer can say... Your NLRB case law seems to suggest the onus is on the employer to start by turning over the information to identify what is not turning over. But our case law in Hertz puts the shoe on the other foot. In this circuit, the obligation is on the union to identify in some way, not just we want everything. Grant, maybe they should have turned over the original agreement itself without the pushing or not. But once we get down to the agreement's been turned over, a couple schedules have been turned over. We're fighting over what's left on a list of schedules they have. Right. They have some obligation to articulate what indicates that the items on that list of schedules are relevant. No, I understand, Your Honor. And just one point of clarification, unless I misunderstood. I don't think anything or any schedule was actually turned over by the and ultimately two schedules through the state. But to answer your question, as this court explained in Hertz, generally the union should convey facts supporting its theory of relevance. But the court noted there will be exceptions. Cases where, including the context of the request, the employer knew or should have known the basis for the relevance, the relevance of the document. The board reasonably found this is such a case. Could reasonable minds disagree? Perhaps. But under the substantial evidence test, the board was entitled to take a reasonable view of the facts and the employer's admissions of relevance, as the board saw it, as showing the union met its standard. And I think some of this is that it's a practical approach. If the employer knows basically why the union feels the information is relevant, and in this case, it's based on the you don't have to go through this game of the union saying, it was this page of your letter. It was that page of your letter. The employer is acting as a good actor here. It lays out to the employees, look, you might worry about your benefits. Your benefits are going to stay the same. You might worry about layoffs. Layoffs are going to stay the same. You're not going to have layoffs. You might worry about locations. So they put out a list of things that employees might think about in this merger. If the union came back and said, you know, that was a useful list. How about anything that relates to items 1 through 16 on the first three pages you gave us? We'd have a different case. We have the vaguest of requests from the union, and yet you want to shoehorn all of that into the readily apparent exception that was at the end of Hertz. And Hertz seems to anticipate the normal situation is that the party requesting will articulate in a minimal way relevance. And then we get to what's there's a list at the employer's briefing pages 26 to 27. Eight pages of testimony from Mr. Cruz. Mr. Cruz has asked, well, how is this relevant? So this is in litigation afterwards, not at the time you should have justified it. And we get a list of this might be relevant, this might be relevant. And the last of them is, and yeah, I mean, some of those titles, to be honest with you, I don't even completely understand what kind of information would be contained within them. So 14.5A, specified CROSA personnel for knowledge standard, 14.5B, who knows what's in there? It would be good to know. Maybe there is information that's really quite relevant. Is it the board's position that we have to defer even to that as enough of an articulation of could be relevant on a fishing expedition? Well, Your Honor, as my time is getting low, I do want to answer those questions. We're interested in what you have to say. Of course. Thank you. I do think there's substantial evidence here to support a you said. But again, this is not meant to be a high burden under board law and consistent with statutory purposes. And the union met that minimal burden in the context of being given a letter that indicated the potential relevance of this document. Changes to the employment of unit employees, potential changes to their pay, potential changes to the funding of their pension plans. And I should hasten to note, as the judge did, some of this appears to be burdens. And so the question becomes, what do you do when there is a dispute over how much of that should be turned over since the parties seem to agree at least some of it is potentially relevant? And the board is an orderly process for that. Once the union meets that burden, and it's the board's view that it did of making a request for relevant information, the employer is not entitled to withhold the whole thing. Its duty is to disclose, provide any portions that acknowledges are relevant and producible, and identify which portions it's withholding and why. For example, if you want to say we have a confidentiality issue, you have to support it, not just make a blanket assertion. Subtle law says making a blanket assertion is insufficient. Now, I'm not denying that the employer was a good guy, if you will, when it sent that letter giving the union information about the sale. The concern is that the employer didn't meet its statutory duty of saying this is what we're withholding and why. And that's a problem because it leaves the union in the dark. As your honors asked this morning, how is the union supposed to know what you think is confidential or irrelevant or irrelevant? We need the employer to tell the union. And it's not an overwhelming obligation. All they have to do is what their agent said she usually does, which is provide what she feels she can, identify what she's not providing, and explain why. And here's where we get to the idea... Is that on the record? Which part, your honor? I'm sorry. What she just said. It said... Yeah, it's on the record that she said that's... Ms. Spallotta said that's her normal procedure, and we don't know why she didn't follow it here. Okay. But there's good reasons for putting that on us on the employer as the one that possesses the document. Otherwise, the union's in the dark, and you're not encouraging a meaningful discussion over the scope of disclosure. I think the root of the problem here is that you call a statutory duty what is, in fact, something the NLRB has developed through its case law. And in practice, you are putting the onus on the employer. And I read Hertz as saying the Third Circuit puts the onus on the union to request with some specificity. And I don't see how the readily apparent exception gets you everything that you need here. Well, it is because it's apparent and agreed that at least portions of this are relevant. And that would be the Hertz portion. Acknowledging that we may not know whether or not everything's relevant, that's exactly why the board, properly and consistent with precedent, has the employer meet its burden of identifying what it's withholding and why. When the employer is here, fails to do that, the union's in the dark. You could say union, please meet, but the union wouldn't be informed as to why you withheld certain documents. I see your time is up, but I would like to hear a little bit about the punitiveness of the remedy. I'm somewhat troubled by this. Well, before we get there, let's go. I started off by asking your adversary, well, I mean, you're with the board. There's got to be a better way than having to come to this when you could just give it to some third party officer to make the calls to what's relevant and what's not. Is there such a procedure where you have to, there's a charge after you filed and then you get to an arbitrator and it's a year later and eventually, you know, it's figured out what's relevant and what's not. Well, as my opponent noted earlier in response to your question, arbitration often is an option. It may have been a good option here. I don't know, but it wasn't an arbitral issue and the parties decided not to go that way. So that's why we're here. Who fulfilled their statutory duties? The board's views, the union did asking relevant, you know, showing relevance. And let's say for the sake of argument, I know there's questions about relevance. What happens when the union meets that minimal obligation? Well, what's supposed to happen is the employer identifies what they're withholding and why. And then after doing that, the parties can bargain about it. Absent meeting that duty, the union has done its job and isn't required to do more. I know my opponent is concerned. You know, didn't you say you wanted the whole thing? But as the board said, even if that wasn't a justifiable position, because the board's not saying we know for sure everything's relevant, the employer didn't meet its burden of saying what they were withholding and why. So as the board put it, they never put the union to the test of modifying their position. And again, it wasn't a hard burden. It's just the employer could have followed its usual course and support their claims and explain what they were withholding. Now, let's get to the to the remedy. All right. The problem is you're on our time now. So, you know, understood. Thank you. So, you know, what basically I mean, you know, the argument is a punitive. And it seems that that what's turning over the whole agreement gives both relevant and non-relevant information. They're only you're the union's only entitled to relevant. Isn't that punitive? Is there and is there any precedent that supports that kind of relief? Right. And in the end, the answer is yes. But I know I don't really need to remind the court of this, but I just do want to point out that this is a deferential standard of review. And I'm not saying you rubber stamp anything, but just that the board's remedy should be affirmed unless it's a patent attempt to achieve ends not allowed by the act, which simply means if there's no perfect remedy and you could go this way and my opponent suggest maybe you could go this way or the dissent feels differently. That alone doesn't meet the appellate burden of justifying disrupting the remedy. But to go to your question, it's not punitive because going back to this, what is an orderly way of settling these disputes when the employer had the opportunity but failed to list and explain what it was withholding and why and to support its confidentiality claim when it failed to do that in a timely manner, it waived its right to make that claim. And as the board pointed out, to allow the employer to have a second bite at the apple this late in the game would give it the benefit of its failure a year now more of bargaining with an uninformed party who didn't have the document when they were bargaining. But that's really what my opponent is asking for. We didn't do it at the time when we're supposed to. Let us go back and do it now. But as the board pointed out, that wouldn't be a good incentive. I think the difficulty we're having is if it were clear that the remedy were as close as you could reasonably get to putting the party in the position it'd be in, we wouldn't be here. But when you start talking incentives, the dissent reasonably understands it as deterrence. And it's making an example out of this guy so that future people don't monkey around like this. And that's where you could characterize it as punitive. Your points are fair. My response and understanding is this. When it comes to what the circumstances would have been had the employer met its obligations, there's two things. First, we're assuming for the purpose of looking at the remedy that there was a violation, meaning that the union established relevance. At that point, the union was required to do no more in order to be entitled to at least part of the document. So at that point, the employer hasn't provided any reason for not giving over the whole thing. I'm saying that's the status quo answer. I think we can lose sight of that. It's a burden-shifting approach in a way. At that point, the union is entitled to the document. And the other thing is, to the extent we're not sure, the reason is because the employer didn't meet its duty to tell us what it thought it could produce and not and explain why. Well, you're kind of getting toward punitive, aren't you? I think you're talking about incentivizing, you know, hey, employers, you should act a certain way. And doesn't that get close to being punitive? I don't think it's punitive because it's furthering the act's statutory interest in promoting informed, meaningful, collective bargaining, which you can't have without information. And I think it is fair to say, if the board sets an orderly process and the employer doesn't make its case at the time and waives its right, it's not punitive to just say, we're not going to give you more than the statute affords you. We're not going to give you a second bite at the apple. And I do think it's fair to say, at some point, if we're raising uncertainty about what the scope of disclosure should have been, isn't it fair to ask, shouldn't we put the burden of the uncertainty on the wrongdoer whose wrongs caused the uncertainty? And that is settled law, too. And there are cases saying that the appropriate remedy, when the employer doesn't explain and substantiate its confidentiality claim when that's the situation, the remedy isn't to afford them another chance to do their duty and explain their confidentiality claim. The remedy under law, for the reasons we've discussed, is to order disclosure of the whole document. But do you have any precedent to that effect? I believe it's the cases we cite in our brief, the postal service case, the Lasher case. I believe it's the Watkins case. Those are cases where the board said, because you didn't meet your burden of explaining what you're withholding and why, we're not going to give you a second bite at the apple now. OK. You make the point, this is your case law, and it has somewhat more force in the waiver context. But I guess, ultimately, we have to draw a line as to whether you think deterrence is different from retribution or punishment. Yes, the board didn't see it as retribution. The board saw it as laying out the orderly timing of when you make your claim and saying, you missed the boat, and we appreciate that you're asking for a second chance. And there may be future cases where that would be justified, but not one where it's quite clear in the board's view that they didn't even identify what they were withholding and why. And I would just ask you, as you realize, I'm not saying there's always a perfect remedy. I'm just saying this doesn't go beyond the board's significant discretion and attempt to achieve something the act prohibits. Well, if you could bear with me, if we're with you on liability, and if we go, if we talk about the remedy and say, all right, the dissent was right, it should only be the relevant portions of the agreement that get turned over. What's the harm in that, kind of a holding? I mean, is it that, again, there's no incentive for the employer to comply, and you have to go through a charge and an arbitration to get a document that could have been turned over years before? I do think that is a harm, that there's no incentive in the next case for the employer to comply by substantiating their claims at the proper time. And you have years of delay and a union bargaining on a less informed basis. And I do think that's a harm that the board is justifiably trying to avoid. And avoiding that harm, and preventing a wrongdoer from benefiting from their wrongs, is not punitive. I think that's supported by subtle clause. Unless your honors have other questions. Okay, thank you, counsel. Good afternoon, your honors. My name is Claiborne Newell, and I'm here on behalf of the Pennsylvania Association of Staff Nurses and Allied Professionals. I'd like to start off with addressing the Hertz case, because I think the Hertz case is really not inconsistent with the Hertz case. The board divides information requests into two categories. One, directly relating to bargaining unit members, and one relating to people who are not bargaining unit members, who are other employees or other people. The categories, the questions related to bargaining unit members are presumptively relevant. So all the union has to do is ask for that information, and the employer has an obligation to turn it over. Questions having to do with people who are outside the bargaining unit, who are not members, who are not employees, who may be just individual persons, there the union has to establish relevance. The Hertz case deals with a request for information outside of the bargaining unit. The Hertz case, what the union was requesting, was information related to applicants for employment to Hertz. The union felt that the Hertz was possibly discriminating, and they wanted information relating to all the people who applied to Hertz, what their gender was, what their race was, and their names. And it was in that context, and as emphasized by the court itself. So what we're talking about is the language on page, what the heck page is this? It's page 874. In some situations, the union's reason for suspecting that discrimination is occurring would be readily apparent when it's clear the employer should have known the reason for the union's request for information, a specific communication of the facts underlying the request may be unnecessary. That's really what you're talking about. Well, yes, and I think if the union was requesting information about its members and discrimination against its members, there would have been a different standard. But it was requesting information about people who are not even employees, who are not even covered by the act. And I think the court made very clear on page 869, when it said, our precedent establishes that before an employer is required to provide a union with information about individuals who are not members of the bargaining unit, the union must. And that distinction, at the end of 873, the court adverts to the, it looks unreasonably asking about non-members. But before that, the court sets up a general approach at 873, the first column, a general rule, the duty to bargain over hiring practices arises only when the union has made a demand and has communicated information to the employer, indicating it as an objective basis, in that case, for alleging discrimination. So there's this requirement that the court says has to be a rational, equates it with a reasonable basis, has to make the reasonable basis known, which seems different from your, well, we can just presumptively view everything that relates to our members as discoverable. They seem to still say there's an obligation on the union to articulate to the employer what that reasonable basis is. I think they do say that, but it's in the context of an issue as to whether or not the employer had to provide information related to people who are not employees. It's not the order in which the court's logic proceeds. It sets this out as a framework, and then it applies it and says, you need some particular showing here because they're not employees. I'll grant you, maybe there's less of a need, less showing would be needed when it relates to your members than not, but does the generally accepted accounting principles relate to your members? I wouldn't think generally accepted. Do intellectual property rights relate to your members? No, but I think... Real estate holdings elsewhere relate to your members? I think when an asset purchase agreement has a provision that says how we're going to deal with collective bargaining agreements, how we're going to deal with an existing pension plan, all those things are presumptively relevant, and I think it's important... I think that's right. I think it's important to recognize that the employer did say to the union that terms and conditions of employment of represented members were going to be set initially by the new employer. So that means to the union, immediately, the understanding is, well, they could set different wages, they could set different benefits, they could set different working conditions, and so on and so forth. So that immediately raises the question to the union, what is in the asset purchase agreement that might respond to that issue? To make a very fair point, and if the union had written that email on January 18th, we would have a different case. But the January 18th email just says, we want the whole asset purchase agreement. Then we have February 10th, I haven't heard from you, we want the whole asset purchase agreement. We have a response from the employer on February 10th that says, look, we have some confidentiality issues here, we don't think the whole thing is specified. What's relevant, how, we'll listen. And then we get an email back February 11th, not specifying anything in response to that request for clarification, but saying, we're hoping to avoid involving the labor board, you have to give us the whole thing, and then we can bargain over confidentiality. So the employer invites specification per Hertz. Hertz calls for specification. And it's not until we get into litigation that we have any actual reasons given by the union. And then Chris's eight pages of testimony, pages 26 to 27 of petitioner's brief, are these enough to uphold blanket disclosure of all the statements made in litigation, which are pretty tenuous, enough to uphold blanket disclosure of all this? No, Your Honor. But the issue is not blanket disclosure. The issue is the union perceiving that there are issues that are going to come up in effects bargaining. Effects bargaining is you have, you're going from one employer to another employer. So under the law, the union has the right to bargain over the effects of that change. Now, one of the effects that's been identified to the union already is that something's going to happen to its pension, and something's going to happen to the terms and conditions of employment for new employees. So when the union says, we want this for purposes of effects bargaining, the employer, as a sophisticated employer that's dealt with union, understands that these are the issues that the union is going after. And the fact about the asset purchase agreement, that under board law, in order to make bargaining possible, certain preconditions have to be established. One is that the employer has to turn over what's relevant to the employee, what's clearly relevant to the employees, and is non-confidential. It has to turn over that information. So the union has some idea of what it is that they're going to be bargaining over. Second, it's required to identify those portions of the agreement that it considers to be confidential. Because that's what they're going to be bargaining over is, is this confidential? Is it not? Can we come up with a way to protect the confidentiality of the employer, and at the same time give the information the union needs in order to bargain? And then it's required of the employer under board law also to propose an accommodation, like redaction or a confidentiality agreement. These three steps set the preconditions for over-obtaining confidential information or deciding that you're not going to obtain that confirmation. None of these things was done by the employer. So the preconditions for bargaining weren't set by the employer. There was no possibility for the union to engage in meaningful bargaining with the employer over this asset purchase agreement because the preconditions for bargaining were not set. But you seem to be suggesting that because of the letter that was sent to the union and your response that you can expect a request for a fixed bargaining shortly thereafter, that that is enough to sort of suggest that the asset purchase agreement should be turned over to you, creating sort of a rule that it is presumptively reasonable. Give me the whole thing. It's presumptively reasonable. It's presumptively relevant. Under the circumstances of this particular case, where you have an employer that's selling their entire operation to a new employer, and you have an employer that said that new conditions are going to be set by the buyer, new conditions, new terms and conditions of employment, not saying what they are and saying that we're going to change your pension, changes have to be made to the pension, and also saying that our health care is going to be different, and the union says we need this agreement to bargain for, bargain effects in an effective manner, that's sufficient to establish relevance on the part of the asset purchase agreement to the union. At that point, the employer is obligated to undergo the process that I've identified. I just want to know, why didn't you make it more clear by giving more detailed information, outlining what you thought was relevant from the asset purchase agreement, mindful of the fact that you don't have it in your hands? Well, that's one of the problems. I mean, the union had no idea what was in the asset purchase agreement that the employer had. Had the employer disclosed the non-confidential but relevant portions of the agreement, which the employer agreed to and conceded in testimony before the board at the hearing that some portions were relevant, had it disclosed that to the union, then the union would have been in a position to have some sense of what else was in the agreement and what else to ask for. But in the absence of that, it's like, I'm going to give you a blank piece of paper. What do you want? What parts of this do you want? And there's no possibility for the union to bargain intelligently because it's not given the information it needs to enter into effective bargaining over what portions should stay confidential, what portions it may not need, what portions are, you know, agreeably not relevant, and what portions are. Okay, thank you, counsel. Thank you. I guess we'll give you some extra time, too. We gave you upstairs a little more time. Oh, great. Thank you, Your Honor. Just a few points in rebuttal. The first, I think, is regarding Hertz. Hertz does set the standard here. Hertz, and I'll just quote it, Hertz quotes Postal Service to the point that only after an employer has had an opportunity to consider the basis for the union's information demands can the employer violate the NRA by rejecting the demand. Here, of course, there was no basis for the demand that was ever communicated to Crozer. All we ever heard was you can expect a request for effects bargaining. There was no elaboration. There was no clarification. There was nothing. My friend suggests that the court should defer to the board's finding that Crozer was put on notice of relevance by context or something like that. Well, generally, we all know the standard, you know, of review here, so. Well, the problem is that the court actually can't defer in this respect because the LJ decision that was then adopted by the board specifically made no finding on that point, and that's at joint appendix page 37, footnote 8. And so for that reason, there actually is nothing to defer to on that particular point. With respect to the argument regarding context, in addition, I think it's worth noting that ultimately, as came out in testimony, the union didn't even have a legitimate theory of relevance with respect to this agreement. Its representatives, in their reeled off, as Judge Bivis noted, something like a dozen different contradictory and somewhat strange claims regarding relevance, but then they ultimately testified upon questioning that what they really wanted was to know as much as possible about Crozer's and Prospect's finances in general, which, of course, is not a proper basis for an information request under the Act. That testimony is at page 224 of the joint appendix. In any instance, the board has not identified any precedent that goes anywhere near this far in relying upon context to backfill a union's failure to demonstrate relevance. I think the strongest case for the... No, I don't know. I mean, you've got, I mean, there's sort of the exception, as it were, in Hertz, which deals with the employer should have known the reason for the request for information. You told them we're selling, there's going to be these things that may be different. I mean, isn't that, you know, I mean, I think, couldn't you agree that a union would be interested in sort of some details on that, at least? Your Honor, yes. But it's incumbent upon the union to identify just what issues in general. Does it affect this provision of the CBA VAT provision? You sent us a letter identifying particular effects. We want to know about this effect, that effect, and that effect. That was all the union had to do here to meet what my friend described as the relatively low standard of relevance at the top of the union, but the union refused to do that. But when the facts are obvious, and they are arguing that the facts were obvious, that you should have clearly understood from the facts here that the information, that parts of the asset purchase agreement was relevant to effects bargaining, doesn't Hertz excuses then coming with the specific facts, outlining with specificity what they think is relevant and what they think is not relevant, or what they are seeking when they don't have it and have the opportunity to see it? Well, I agree with you to the extent that I don't think that the union had to identify, we want this portion of the agreement, that portion of the agreement, and so on, but what they had to do was to identify particular effects. Because keep in mind, a control transaction for a business could potentially implicate any aspect of the employment relationship. In other words, the union might have a view that it affects this, that, or any potential term of employment. All they needed to do was to ask, to say what it was that they were curious about. Not to identify, we want this schedule, but simply to say, we're concerned about this particular issue. We're concerned about pensions. What's in there regarding our pensions? That would have been enough, and the union refused to do that. And I think it's worth noting that when the court, when the board's cases and court cases have involved this type of reliance upon context where a union has not made clear expressly the basis for relevance, it's really had a much closer link. I mean, here you have one letter that was sent, you know, when you look at the record in this case, what you're viewing is the letter and then immediately the exchange between the parties. But there was a passage of time between that. As usual, there was various communications between the different parties over this period of time. It's not like one thing came immediately after the other, and it's certainly not the case that the union's request referenced in any respect the latter. I think the board's best case probably with respect to context is U.S. testing. But the union in that case, which asked for health insurance claims information, made that request at a negotiating session where the employer said, hey, we're going to have to raise the amount that employees contribute to health insurance coverage because there's been so much high claims activity. So the union asked for the claims activity. That's about the strongest case on relying on contextual evidence. In every other case, the union has to actually state the basis for relevance. Maybe you could turn to the remedy. Yes, Your Honor. Your adversary says there are cases that, bless this, what the board eventually did in terms of the remedy, saying both relevant, all information gets turned over. Is that your read of the law? No, it isn't, because I think it's fair to say that at least in terms of the board where the remedy is at issue, this doesn't come up very often. In other words, there aren't very many court decisions on that particular point. I think the court really has two different ways of looking at this. One is with respect to the confidentiality issue. If the court finds that there was simply a failure to bargain with respect to confidentiality due to the union's obstinance, the result is going to be that the parties will wind up bargaining over this. So in terms of the way that this would shake out, that is certainly one way to decide the case, and I think that that's amply supported by both the record as well as precedent interpreting and applying the act. The other, of course, is to address the remedy more directly. The Supreme Court's decisions in Fiberboard and shorthand say that the courts are supposed to look at three separate factors in assessing the punitive nature, potentially punitive nature, of a remedy. The first is, does it restore the situation to what it would have been, but for the violation? Second, is the remedy tailored to the unfair waiver practice? And third, does the remedy effectuate the purposes of the act? This court has applied that standard in systems management, and it's pointed out that when you don't meet those standards, particularly the restoring the party standard, in that instance, the remedy is considered to be punitive, and I think for the reasons reflected in some of the questioning, this remedy does go beyond simply restoring the parties to the position they would have been in. Again, when Crozer was faced with very similar requests by other unions, it negotiated, there were accommodations, and it was able to reach an agreement with them without anything going to the board, no unfair labor practices. It worked the way it's supposed to work under the statute. But along the lines of what I was asking your friend across the aisle, if we agree with you, are we opening up the door to employers to just delay, basically, say, hey, no, I'm not turning anything over. Not that you folks did, but perhaps that's what would you know, just turn over what's relevant. And years later, after many opportunities to bargain in an informed way, there is real damage that occurs. How do you respond to that? Well, Your Honor, I don't think that it's a concern on the facts of this case for two reasons. The first is simply that there was no attempt by the union whatsoever to do that. I get that, but what about in a general way? We write a presidential opinion. We say, yeah, somebody's got to just check. You only get what's relevant. Is that an inducement now? Do all employers read that and say, well, shoot, all we got to do is delay. Maybe we get to the Third Circuit. Maybe, you know, who knows? But, you know, is that really right? Isn't that a problem? I don't think so, Your Honor. And again, let me just note the facts of this case and why I think that answers your question to an extent. I don't know about the facts of this case. I want to know about the next case. Well, I'm talking about how the, well, specifically, the union made no attempt to demonstrate relevance. The court can simply reaffirm what is the law, which is that the standard for demonstrating relevance is very low. The standard for indicating specificity is very low. This is not a high burden for the union to clear. The union in this instance made no attempt to do that. I think that is the type of decision that would have no impact whatsoever on the, forget the mind run of cases, pretty much any case I'm aware of, but for this one where the union simply said, we want this, affects bargaining, and that's it. In the rare case where there has been an unfair labor practice charge on that basis, the board has said, no, you don't get it. You have to be more specific than that. It's only come up a few times because unions typically go a little bit farther and say exactly what it is they're interested in. Sometimes they participate in bargaining where the parties can clarify what it is that's being requested. The union here took such an extreme position that the court can simply reaffirm what is currently the law, and that would be enough to decide this case. I don't think the And the other point I would make in response to Your Honor's question is simply that with respect to confidentiality, again, it's a very rare thing that a union simply refuses to discuss the issue. It comes up very rarely in cases. The two board cases that we're aware of where that did come up, the board sided with the employer, saying the employer had a procedural right to bargain over an accommodation. Again, the union here frustrated that right. It refused to engage in bargaining on a basis that was legally unjustified, and if the court simply were to recognize as much, I don't think there would be any change in the law whatsoever. It would simply enforce existing board precedent. So for all of those reasons, we would ask the court to please grant the petition for review. Thank you, Your Honor. Thank you. Thank you both counsel for excellent, all three counsel, actually, for excellent briefing, excellent oral argument. We'll take the case under advisement, and we'd like to greet counsel at sidebar and thank you again in a more personal way for your excellent advocacy, and if the clerk would adjourn court. Can we go back on the record for a minute? This is a very interesting oral argument. Could you order a transcript? The clerk can help you with that, and if you could split the cost between the petitioner and the respondent, that would be terrific. Thank you. And off the record. Thank you.